508 June 26, 2024 No. 447

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRANDY ALEXSANDRA HOWE,
aka Brandy Howe,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR17608; A179832

Angela F. Lucero, Judge.

Submitted April 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and James Brewer, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

Jacquot, J., concurring in part, dissenting in part.

**AOYAGI, P. J.**

Defendant was convicted of second-degree custodial interference, ORS 163.245, based on an incident in which she kept physical custody of her daughter, K, for approximately 24 hours, instead of returning her after a two-hour supervised visit, at a time when K was in the legal custody of the Department of Human Services. On appeal, defendant raises two assignments of error. First, she argues that the trial court plainly erred by basing its verdict on a misunderstanding of the facts. Second, she argues that the trial court erred by imposing a probation condition that she complete a "Drug and Alcohol eval Per [probation officer]." For the following reasons, we affirm.

*Verdict.* Defendant argues that the trial court's speaking verdict at the end of trial reflected a "manifest misunderstanding of the evidence." Specifically, defendant points to the court's statement that a particular witness, Jimenez, "testified that she was contacted by [defendant] on September 30th," when Jimenez in fact testified that she did not remember the date of the contact. Defendant acknowledges that she did not preserve this claim of error and requests plain-error review.[1]

We disagree that the trial court plainly erred. Jimenez testified that, in September 2020, defendant called and asked her to come pick up K and take care of K for an unspecified length of time, and that defendant had never previously asked her to watch K outside the home. On cross-examination, Jimenez clarified that she remembered that it was September 2020 only because the prosecutor said it and that she had no independent recollection of the date. Meanwhile, other undisputed evidence was admitted at trial that Jimenez arrived at defendant's home on the morning of September 30, K was loaded into Jimenez's car, and

---

[1] "Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to review for "plain" errors. ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). It is a matter of discretion whether we will correct a plain error. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

at that point the police arrested defendant. The trial court later stated while ruling:

> "Jimenez also testified that she was contacted by [defendant] on September 30th—so the following day from the [supervised] visit. And was asked to help care for [K] and that she believed that she was being called to the home to pick up [K] and that she was going to care for the child for an unknown period of time. She did not know whether it would be a short term, long term."

Under the circumstances, it is entirely plausible that, in stating that Jimenez "testified that she was contacted by [defendant] on September 30th," the court was simply introducing its description of Jimenez's testimony about the contact itself, adding in the date because it was undisputed and established by other evidence. Another possibility is that the court misunderstood or misremembered Jimenez's testimony regarding the date of the contact. Because the record allows for competing inferences, the alleged error is not plain.

In any event, any error was harmless. The only possible inference on this record is that September 30 was the date that defendant asked Jimenez to pick up and care for K. Had defendant objected to the court's statement, the court might have slightly revised it to be more precise, but there is no reason to believe that it would have made a different finding as to the date. Further, in the end, the timing of defendant's contact with Jimenez was immaterial to the verdict. The court found defendant guilty based on her having kept K for 24 hours, until law enforcement intervened to arrest her and take custody of K. What mattered to the court was how long defendant had already kept K—not how much longer she intended to keep K, or who she intended to watch K—and that it took law enforcement intervention to get K back. We reject the first assignment of error.

*Probation condition.* Defendant next challenges her probation condition regarding a drug and alcohol evaluation. Under ORS 137.540(2), the trial court "may impose any special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or

both." That means that a special condition must be "(1) reasonably related to the crime of conviction or the needs of the defendant, *and* (2) imposed for the protection of the public or reformation of the offender or both." *State v. Borders*, 293 Or App 791, 794, 429 P3d 1067 (2018) (clarifying proper construction of ORS 137.540(2) (emphasis in original)).

The court initially expressed skepticism about the state's request for various special conditions, including its request for a drug and alcohol evaluation, and defense counsel objected to the drug-and-alcohol-evaluation condition as beyond the court's authority. After hearing from defendant personally, however, the court decided to impose the condition, explaining it as a way to connect defendant with in-patient services that she wanted and had been unsuccessfully trying to obtain herself. Specifically, the court told defendant that "with regard to drugs and alcohol, I'm going to leave it within the discretion of your probation officer to try and assist you to find places that might be able to help your dual diagnosis"; that "if you find a program and they can get you a bed, that's what you should do"; that it was imposing the condition "mainly because I think that that's something that you need" based on what defendant said; and that it was "not necessarily a mandate" but an opportunity for defendant to discuss with her probation officer what defendant thought she needed "to better succeed" on probation.

The state argues that defendant invited any error in imposing the challenged probation condition, when defendant personally told the court that she wanted and had been looking for in-patient services for her dual diagnosis but had been unable to find a place to take her. We disagree. Defense counsel unequivocally objected to the proposed condition. Later, defendant personally answered some questions from the court about her life and her goals and, when specifically asked about her own efforts to address drugs and alcohol, explained her unsuccessful efforts to obtain in-patient treatment. Defendant did not ask the court to impose a *probation condition* regarding drugs and alcohol. Nor did defense counsel withdraw her unequivocal objection to a drugs-and-alcohol condition as beyond the court's authority. We therefore disagree that defendant invited the alleged

error. *See State v. Ferguson*, 201 Or App 261, 270, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006) (discussing what it means to invite error). We also disagree that, to adequately preserve the claim of error, defense counsel needed to object again after the trial court ruled. *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011) ("Once a court has ruled, a party is generally not obligated to renew his or her contentions in order to preserve them for the purposes of appeal."). The claim of error is preserved.

As for the merits, the record is thin, but, ultimately, we are persuaded that defendant herself tied her desire for in-patient drug or alcohol treatment to her desire to succeed on probation in a way that allowed the trial court to conclude that imposing the challenged condition was reasonably related to the "needs of the probationer" for the "reformation of the probationer." ORS 137.540(2). The court therefore had authority to impose the condition and did not err in doing so.[2]

Affirmed.

**JACQUOT, J.,** concurring in part, dissenting in part.

I agree with the majority that the court's verdict convicting defendant was not plain error. I write separately to address the probation condition that the trial court imposed requiring defendant to submit to a drug and alcohol evaluation. I agree with the majority that the error was preserved by defendant's attorney and was not invited by defendant's comments about the difficulty in locating and obtaining dual diagnosis treatment. However, because the condition was not related to the crime of conviction or the current status of defendant at the time of sentencing, I would reverse and remand for resentencing to omit the challenged condition.

---

[2] Although it is a close case, we ultimately disagree with the dissent that the record was insufficient to impose the condition. As to the specific points made by the dissent, we make two observations. First, defendant has not made any argument that the condition was improper because of the "per PO" aspect. *See* 333 Or App at 514-15 (Jacquot, J., concurring in part, dissenting in part) (discussing the "per PO" language as a "problem" with the trial court's approach). Second, the condition requires only an evaluation, not treatment. *See id.* at 515-16 (discussing condition).

As the majority notes, under ORS 137.540(2), the trial court "may impose any special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both." That means that a special condition must be "(1) reasonably related to the crime of conviction or the needs of the defendant, *and* (2) imposed for the protection of the public or reformation of the offender or both." *State v. Borders*, 293 Or App 791, 794, 429 P3d 1067 (2018) (clarifying proper construction of ORS 137.540(2) (emphasis in original)).

Defendant was convicted of custodial interference in the second degree, and it is undisputed that the state produced no evidence that the crime was caused by or connected to drug and alcohol use. The court recognized that there was "a very limited issue" before it and that it was "only authorized to sentence with regards to what is before me and the—and the conviction before me, obviously, which was custodial interference in the second degree." The court questioned whether the requested additional conditions were "within this Court's purview."

In objecting to the special conditions, defense counsel acknowledged that perhaps requirements such as drug and alcohol evaluation and treatment were relevant to defendant's prior case with Department of Human Services (DHS) that had led to the original removal of the child. But, as defense counsel correctly explained:

"[Defendant] addressed the needs that were set forth in the dependency case through that case.

"That's the appropriate place to do that. That's what that court is for. They're there to make sure that whatever it was that caused the child to be removed from the home should be then remedied in that case. It has nothing to do with this conviction.

"* * * * *

"But I think loading her up with all sorts of classes, you know, evaluations and *** parenting classes, and all sorts of things might just derail her from the *** progress that she's made so far on her own, you know, being employed full-time, staying out of trouble and being in counseling.

So I think that the conditions, other than the community service that the State's asking for, are not related to \*\*\* the crime of conviction."

Defendant told the court that she was maintaining sobriety but wanted help from an in-patient program that could address both her substance abuse history and mental health issues. Despite reservations about its authority, the court responded to defendant's concerns about being unable to access a dual diagnosis program by adding a condition that she receive a drug and alcohol evaluation "not as a mandate," but at her probation officer's discretion. The court expressed a well-intentioned hope that doing so could assist defendant in accessing a program:

"I get it from the other side, how can probation be positive. But I'm hoping that what probation can do for you, given the circumstances, is help open up resources for you that you may not on your own be able to get.

"\* \* \* \* \*

"Now, with regard to drugs and alcohol, I'm going to leave it within the discretion of your probation officer to try and assist you to find places that might be able to help your dual diagnosis. And \*\*\* I don't put that condition on you \*\*\* on purpose.

"I can see that there might be a need, and you just haven't been able to access that. So \*\*\* I'm going to leave it within the discretion of your PO, but that they might be able to help you find resources that might help get you on better track.

"\* \* \* \* \*

"\*\*\* [I]f you find a program and they can get you a bed, then that's what you should do. And not just to get custody back, but for you, for you so that you can stand up high and you can say these are things that I encountered in my life, but I want something different. I want to be different.

"And so I'm going to put that in there mainly because I think that that's something that you need. Not because I'm trying to correct bad behavior from past but because that's something you've represented you've tried to find on your own, but you can't necessarily find those resources.

> "So I'm hoping that if I leave it within the discretion—it's not necessarily a mandate. But if you can talk with your probation officer as to what you think you might need to better succeed and be here a year down the way and tell me that you now have a year and something under your belt of sobriety, that's what I want to help you get towards."

There are two problems with the court's approach. First, a trial court cannot delegate its power to set probation conditions to a probation officer: "While the sentencing judge has substantial leeway in determining conditions of probation, the conditions must be fixed by the court." *State v. Maag*, 41 Or App 133, 135, 597 P2d 838 (1979) (holding that probation could not be revoked based on condition of probation set by the defendant's probation officer subsequent to sentencing and not by the sentencing judge); *see also State v. Rivera-Waddle*, 279 Or App 274, 279, 379 P3d 820 (2016) ("[A] probation officer's status with respect to his probationer is derivative. It cannot be greater than that of the court which gave the probationer into his charge[.]" (Internal citations and quotation marks omitted.)). Because the trial court characterized the condition as "not necessarily a mandate," it is concerningly unclear whether the trial court was setting a probation condition or attempting to improperly delegate its power to mandate the probation condition of drug and alcohol evaluation and treatment to the "discretion" of the probation officer. This leaves an open question about defendant's vulnerability to sanctions were she to refuse to attend any treatment program offered to her, whether or not it is of the type that she was having difficulty finding prior to the hearing.

Second, however well intentioned, a sentencing court cannot go so far as to rearrange the probationer's life simply because it might be good for them. A special condition that is imposed for rehabilitative purposes "encompasses requiring a convicted offender to abstain from types of conduct shown to have played a role in his past offenses or to take affirmative steps towards developing better patterns of behavior, but it does not give courts open-ended discretion to rearrange an offender's life." *State v. Donovan*, 307 Or 461, 466, 770 P2d 581 (1989).

In *Borders*, we rejected "no alcohol" and "victim impact panel" special conditions imposed on a driving while suspended (DWS) probation, even though repeated convictions for driving under the influence of intoxicants (DUII) formed the underlying basis for the suspension. 293 Or App at 795. Although ceasing drinking "could be beneficial" to the defendant in "ways unrelated to his [DWS] conviction," the defendant was not on probation for DUII, and there was no connection between the defendant using alcohol and his DWS. *Id.* at 796.

Here, although drug and alcohol evaluation and treatment may be beneficial to defendant, as she expressed herself, the record does not reflect that drug and alcohol use were connected to or played a role in her conviction for custodial interference. Although defendant acknowledged that a dual diagnosis treatment program might meet her needs, it was unrelated to the crime of conviction. *See State v. Qualey*, 138 Or App 74, 78, 906 P2d 835 (1995) (reversing no alcohol condition in assault case after consumption the night before the assault when there was "no connection between defendant's inability to control his temper and his possession or consumption of intoxicants"). By adding the condition, the court gave itself the ability to sanction defendant for noncompliance with a condition that limits behavior that was not related to the offense for which the court had authority to sentence her. In my view, the court's well-meaning attempt to assist defendant exceeded its authority.

Therefore, I respectfully dissent regarding the alcohol and drug evaluation and treatment probation condition, but otherwise concur.